## BILL MOORE v. THE STATE.

### No. 5140. Decided November 20, 1918.

**1.—Receiving Stolen Property—Definition of Offense.**

In order to justify this character of pleading it is necessary that it be shown that the grand jury did not know and could not have ascertained by reasonable diligence from whom the alleged stolen property was received, and where there was evidence that the grand jury knew, or could have known, the jury should have been instructed to this effect, and a charge of the court which left it to the jury to find defendant guilty, if he received it from anyone, known or unknown, was reversible error.

**2.—Same—Rule Stated—Fundamental Error.**

Wherever the indictment charges an offense, the facts and the charge of the court must conform to the allegation in the indictment, and it is fundamentally wrong to authorize a conviction on any state of facts other than those which support the finding of the truth of the indictment. Following Grant v. State, 59 Texas Crim. Rep., 123.

Appeal from the District Court of Dallam. Tried below before the Hon. Reese Tatum.

Appeal from a conviction of receiving stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*A. M. Mood,* for appellant.—On question of fundamental error: Sue v. State, 52 Texas Crim. Rep., 122; Jones v. State, 55 id., 207; Tubb v. State, 55 id., 606; Raines v. State, 56 id., 94.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was acquitted of theft as charged in the first count and convicted of receiving stolen property alleged in the second count. This count alleged that appellant received the property from some party to the grand jurors unknown. In order to justify this character of pleading it is necessary that it be shown that the grand jury did not know and could not have ascertained by reasonable diligence from whom the alleged stolen property was received. The evidence bearing upon this phase of the case came from the witness Spencer. He was a member of the grand jury which returned the indictment, and was secretary of that body. He says: "In deliberating on the evidence in that case, before the finding of the indictment, the grand jury did not ascertain the name of any person from whom Bill Moore might have or did receive the cattle with which the grand jury by this bill of indictment charged him with the theft of, subsequent to the taking of such cattle from the Jennings ranch. We used all the diligence, and from the evidence we could gather, to ascertain the name of that person; used all the evidence we could gather. I mean by that that we used all sources of evidence at hand and that we could investigate, and from that I state that I did not ascertain the

name of that person, if any, from whom Bill Moore might or did receive the cattle. As to whether or not in fact I don't know whether he did receive any from this said person or not, I will say from the information we gathered he did, yes, but we couldn't tell who it was, we had no evidence to show who it was; nobody ever did call his name or nothing. As to us not being positive whether he did receive this stuff from this said person or not, we didn't say that we found anyone that he had received it from." This is the evidence in the record in regard to this matter.

There is evidence which shows at the time that appellant's brother is supposed to have taken the property, or at the time the State relied upon to show that his brother took the property, appellant was not with him but was miles away from the scene of the supposed taking. This seems not to have been controverted. Upon his arrival at home at night the animals were in a pen at appellant's mother's residence, and had been placed there by his brother. The next morning appellant was requested by his brother to assist him in driving the cattle from that point to a pasture belonging to Mr. James, a number of miles away, Mr. James being one of the alleged owners. Complying with this request appellant assisted his brother in driving these cattle to Mr. James' ranch, where they were put in a pen or corral, and where they remained for some time. There is evidence also showing that the cattle were driven to the James ranch to be delivered to Rube Johnson, who was foreman for Mr. James on this ranch. Johnson at the time was in Kansas City, Mo., with a shipment of cattle belonging to himself and Mr. James. The cattle were unbranded. Two of them, however were marked. A witness testified he assisted later in changing the marks on these two cattle at the James ranch. Appellant seems to have been present when the marks on the cattle were changed.

The State's case, therefore, is one of circumstantial evidence. The evidence for the defendant is positive that he was not connected with taking the cattle, and that the cattle had been placed in a pen by his brother in appellant's absence. This testimony is mentioned because it bears upon the question of the action of the grand jury in failing to charge the name of the party from whom the property was received, if stolen, and also upon the fact of a fraudulent receiving from his brother, if the facts should be sufficient to constitute that offense as well as upon the charge of the court. The jury found that appellant was not present at the taking by acquitting him of theft. In this condition of the record the trial jury must have found that because appellant assisted his brother in driving the cattle he was guilty of receiving them. The grand jury must have known, under the facts of this record, at the time of finding the indictment, of appellant's connection with his brother in driving the cattle, because the State's case is based upon those facts, and this seems to be also true in connection with the testimony of Spencer. The State having alleged that

the property was received from some party to the grand jurors unknown, it is necessary to prove this, and to do so they introduced the witness Spencer, whose testimony has been given. The jury should have been instructed that if the grand jury knew or could have known by reasonable diligence from whom the cattle were received, they should acquit. Under that theory, if they knew or could have known, the evidence would not have sustained the allegation that they were received from some unknown person. Submitting the issue of receiving the stolen property the court thus instructed the jury:

"You are further charged that if you find and believe from the evidence beyond a reasonable doubt that the red, bald-face Hereford calf was stolen, but you have a reasonable doubt as to whether the defendant stole the said red, bald-face Hereford calf, you will acquit the defendant of the theft of said red, bald-face Hereford calf; but if you find and believe from the evidence beyond a reasonable doubt that the said red, bald-face Hereford calf was stolen, and you find and believe from the evidence beyond a reasonable doubt that the defendant received said red, bald-face Hereford calf after it was so stolen (if you find it was stolen), and that at the time he received said red, bald-face Hereford calf (if you find he did receive it), that the defendant knew that said red, bald-face Hereford calf was stolen, or that the defendant concealed said red, bald-face Hereford calf, knowing it to be stolen, you will find the defendant guilty of receiving stolen property, and assess his punishment at confinement in the penitentiary for not less than two nor more than four years."

This is all the charge given by the court with reference to receiving the cattle. It will be observed this does not comply with the count charging the reception of the cattle from an unknown owner, but it left the jury to find him guilty if he received it from anyone, known or unknown. We think this charge is fundamentally wrong. A conviction can not be authorized for an offense not set forth in the indictment. If the grand jury did not know or could not ascertain by reasonable diligence from whom the cattle were received, it is proper to make such allegation, but that is the case charged in the indictment. In order to obtain a conviction under such allegations it must be shown and the charge must limit the consideration of the jury to such state of case. Under the court's charge appellant could have been convicted for receiving the cattle from anyone, known or unknown. They may have convicted and doubtless did convict him on the theory he received the cattle from his brother. If so the grand jury knew that because they had all the facts with reference to the case before them as they related to the possession of the cattle and the delivering of them at the James ranch. They knew in developing the case that defendant was with his brother, and this is shown by their action in charging theft and receiving stolen property as well as by the evidence. It is not to be presumed that the grand jury found an indictment without facts, and especially in this case because Spencer testified to their investigation

of these matters. Wherever the indictment charges an offense, the facts and the charge of the court must conform to the charges contained in the indictment, and it is fundamentally wrong to authorize a ,conviction on any state of facts other than those which support the finding of the truth of the indictment. It is error of a fundamental nature to authorize a conviction for any other offense than that charged, and this is true whether there was an exception reserved or not to the action of the court in so charging the jury. Grant v. State, 59 Texas Crim. Rep., 123.

For the reasons indicated this judgment will be reversed and the cause remanded.

*Reversed and remanded.*